IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01622-REB-MEH

BRANDON MARTEL EVANS,

      Applicant,

v.

STEVE HARTLEY, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.
_____

## **AMENDED RECOMMENDATION ON APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**
_____

The Applicant, Brandon Martel Evans, has pending before this Court an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") [docket #2]. The matter is briefed, and the Court determines that an evidentiary hearing is not warranted in this matter. Under the provisions of 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, this action has been referred to me for recommendation on dispositive matters and for ruling on nondispositive matters [docket #13]. Based on the record contained herein, I recommend[1] that the Application be **denied** and that this

---

[1] The parties are advised that they shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United*

matter dismissed with prejudice.

## BACKGROUND

Evans is a state prisoner in Colorado who has filed a *pro se* Application challenging his 2005 state court conviction in the Arapahoe County District Court. In 2004, following an incident involving the shooting death of an attempted robbery victim, Evans was charged with first degree felony murder, attempted aggravated robbery, conspiracy to commit aggravated robbery, and four counts of crimes of violence.[2] Arapahoe County District Court Trial Court Record ("Record"), vol. I, at 19-24. On August 15, 2005, the trial court held a hearing on a Plea Agreement entered into by the People of the State of Colorado and Evans. Record, vol. III.

Upon his plea, Evans was convicted of Count 4: Conspiracy to Commit Aggravated Robbery and an added Count 11: Second Degree Murder, and was sentenced to forty-five years' incarceration for Count 11 and to five years' incarceration (to run consecutively) for Count 4, for a total of fifty (50) years' incarceration and five years' parole. Record, vol. I, at 280. The remaining charges were dismissed.

Evans did not file a direct appeal; however, he filed a motion for postconviction relief under Colo. R. Crim. P. 35(c) raising the same claims he raises in this action: (1) whether he was denied effective assistance of counsel due to a conflict of interest, and (2) whether he was coerced into taking the plea. Record, vol. II, at 304. The trial court denied the motion, finding no coercion by defense counsel since Evans made no showing of a deliberate misrepresentation by counsel that

---

*States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2]A co-defendant, Tommy Lee Halfacre, was charged with the same and additional crimes.

induced the guilty plea, and finding that Evans' conclusory statements regarding a conflict of interest were not supported by the record. Record, vol. II, at 319. The Colorado Court of Appeals (CCA) affirmed the trial court's decision concluding that defense counsel's advice about the plea agreement was within the bounds of reasonable competence, and that Evans' allegations regarding co-counsel's opposition to the plea agreement did not constitute a conflict of interest that adversely affected her performance. CCA Opinion, February 21, 2008, docket #10-5. The Colorado Supreme Court denied Evans' petition for writ of certiorari on June 2, 2008. Order, June 2, 2008, at docket #10-7.

On July 31, 2008, Evans filed his Application for federal habeas relief in this Court alleging that he was denied his Sixth Amendment right to effective assistance of counsel when (1) one of his attorneys opposed the plea offer, but the "senior" attorney insisted that Evans take the plea, thereby creating a conflict of interest, and (2) he was coerced by the senior attorney to take the plea after co-counsel fled the court in tears and he was left to believe he would be unrepresented if he chose to do anything but plead guilty. Application, docket #2, at 5-6.

Respondents contend that the Colorado Court of Appeals resolved Evans' claims in a way that was neither contrary to, nor involved an unreasonable application of, clearly established federal law holding that a defendant must demonstrate (1) a conflict of interest by showing that counsel actively represented conflicting interests in the pending matter and (2) a reasonable probability that, but for counsel's errors, he would not have pled guilty but instead would have insisted on going to trial. Respondents assert that the state courts were correct in determining that Evans failed to meet his burden on both claims.

**DISCUSSION**

Evans proceeds in this action *pro se*. As a *pro se* litigant, Evans' filings are entitled to liberal construction by this Court. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110.

**I.    Standard of Review**

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (citations omitted). Here, Evans is serving fifty years' incarceration for the challenged conviction; therefore, he is "in custody" for purposes of his habeas application. *See Olson v. Hart*, 965 F.2d 940, 942-43 (10th Cir. 1992).

Before filing a federal habeas application, a state prisoner must first exhaust his state remedies by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Accordingly, based on denial of certiorari review by the Colorado Supreme Court in the post-conviction attempt made by Evans, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals, which was the final substantive proceeding in the state appellate review process.

This case is also governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred. *Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999). Under the AEDPA, a petitioner is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

As the Supreme Court stated:

A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (internal citations omitted); *see also Taylor v. Workman*, 554 F.3d 879, 887 (10th Cir. 2009). The first inquiry is whether the clearly established federal law exists on the issue; only once this is established must the Court determine whether the state court's application of such law is objectively unreasonable. *House*, 527 F.3d at 1018 (citing *Carey v. Musladin*, 549 U.S. 70 (2006)) ("The absence of clearly established federal law is dispositive under § 2254(d)(1)"). "The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The state court need not cite to Supreme Court cases in reaching its decision, provided that

"neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Accordingly, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the Petitioner as the federal standard, this Court may presume an adjudication on the merits and apply AEDPA deference. *Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* must be applied. *Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002). Under *Brecht,* habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. This requires more than just an incorrect application of federal law, requiring instead a showing "somewhere between clearly erroneous and unreasonable to all reasonable jurists." *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006). Thus, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.* at 671.

Factual findings made by the state trial and appellate courts are presumed correct, with the petitioner bearing the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003). The burden remains, because "whether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

According to the Tenth Circuit, this Court "owe[s] deference to the state court's *result,* even

if its reasoning is not expressly stated." *Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

Finally, if the state court does not address an exhausted claim on the merits, this Court must review the claim de novo and the deferential standards in 28 U.S.C. § 2254(d) are not applicable. *See Gipson v. Jordan,* 376 F.3d 1193, 1196 (10th Cir. 2004).

## II.     Timeliness of the Application and Exhaustion

According to Respondents, Evans' claims appear to be timely and exhausted. Docket #17 at 4-7. The Court substantially agrees, but disagrees with respect to exhaustion of Claim Two. That is, Evans' instant claim that he was coerced to take the guilty plea because he understood that he would be unrepresented by counsel if he proceeded to trial is significantly different than the claim adjudicated in the state courts that Evans was coerced when counsel told him that he needed to choose between fifty years' incarceration through a plea bargain or a life sentence if he proceeded to trial.

Exhaustion of available and adequate state court remedies is a prerequisite to a habeas corpus application in federal court. *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)); 28 U.S.C. § 2254(b).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 120 L.Ed.2d 865

7

> (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim to each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (some citations omitted).

"Fair presentation of a prisoner's claim to the state courts means that the substance of the claim must be raised there." *Patton v. Mullin*, 425 F.3d 788, 809 n.7 (10th Cir. 2005); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (the state court must be given the first opportunity to resolve constitutional matters arising from its proceedings). The applicant must "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

Here, there is no indication that Evans presented to the state courts a claim that he was coerced to take a guilty plea because, otherwise, he believed he would be unrepresented by counsel. *See* Rule 35(c) Motion and Trial Court Decision, Record, vol. II at 304-321; *see also* CCA Opinion, docket #10-5. Thus, Evans has failed to fairly present the substance of this claim at the state level and the claim is not properly exhausted for this Court's review.

When a habeas application raises both exhausted and unexhausted claims, the application must be dismissed without prejudice for the applicant either to pursue first exhaustion of all claims in state court or to re-file raising only exhausted claims. *Pliler v. Ford*, 542 U.S. 225, 233 (2004). The exception to this requirement is when exhaustion would be futile. *Bear v. Boone*, 173 F.3d 782, 785 (10th Cir. 1999). Colorado's successive petition rule prevents the Applicant from raising new issues in a second Rule 35(c) motion. *See People v. Hubbard*, 519 P.2d 945, 948-49 (1974) (successive application rule). Further, the period of limitations for a Rule 35(c) motion has expired.

Colo. Rev. Stat. § 16-5-402(1) (period of limitations for Rule 35(c) motions). Therefore, because Colorado's procedural rules now bar the Applicant from again appealing claims he has previously raised, and from raising new claims related to the criminal conviction at issue here, the unexhausted claims are technically exhausted, but procedurally barred from review in these federal habeas proceedings. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

In situations such as this, federal courts apply the anticipatory bar. *Anderson v. Sirmons*, 476 F.3d 1131, 1140 (10th Cir. 2007) ("Anticipatory procedural bar occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.") (citation and quotations omitted). The anticipatory bar of the state court prevents this Court from considering the Applicant's unexhausted claims under these allegations unless he can demonstrate "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result. *See Coleman*, 501 U.S. at 750. To demonstrate cause and actual prejudice, Evans must show that efforts to raise the unexhausted claim at earlier stages were "impeded" by "some objective factor external to the defense," for example, where "the factual or legal basis for a claim was not reasonably available to counsel" during earlier proceedings. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). The standard is an objective one, asking not what a particular attorney or *pro se* applicant actually knew but whether the claim was "reasonably available" upon diligent inquiry. *Id*. at 494, 496.

To demonstrate a fundamental miscarriage of justice, Evans must demonstrate that a constitutional error has probably resulted in the conviction of one who is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). To take advantage of the "actual innocence" prong, a habeas applicant must present evidence of innocence "so strong that a court cannot have

confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error." *Cummings v. Sirmons*, 506 F.3d 1211, 1223 (10th Cir. 2007) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "To be credible, such a claim requires [an applicant] to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.

In this case, Evans has failed to argue any cause or actual prejudice for the default or to demonstrate that a fundamental miscarriage of justice would result in this matter. Accordingly, Evans has procedurally defaulted that portion of Claim Two identified above as unexhausted and the default cannot be excused. Therefore, because this Court cannot reach the merits of this partial claim, the Court recommends that it be dismissed.

Further, although it appears that by filing the within Application, Evans may have abandoned his original claim that he was coerced to plead guilty when faced with a choice between 50 years or life (fairly presented in the state courts), the Court is obligated to construe his *pro se* pleading liberally. Thus, in an abundance of caution and construing Claim Two liberally to include the claim brought before the state courts, this Court will proceed with an analysis of Evans' Claim One and partial Claim Two on the merits.

### III.   Merits of the Claims

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington,* 466 U.S. 668, 687

(1984)). If a state court has already rejected a claim of ineffective assistance of counsel, a federal court may grant habeas relief if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Yarborough*, 540 U.S. at 5 (quoting 28 U.S.C. § 2254(d)(1)). Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable. *Wiggins*, 539 U.S. at 520-521; *Woodford v. Visciotti,* 537 U.S. 19, 24-25 (2002) (*per curiam*).

An ineffective assistance claim has two components: a petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness," evaluated from counsel's perspective at the time a decision was made. *Id.* at 688; *see also Bland v. Sirmons*, 459 F.3d 999, 1030 (10th Cir. 2006). The Supreme Court has emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521. Reviewing courts must "indulge[s] a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Moreover, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

A court need not consider whether counsel's performance was deficient, however, if the petitioner was not prejudiced by the alleged deficiency. *Bland*, 459 F.3d at 1030. To establish prejudice, an Evans must show that there is a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687;

*see also Smith v. Workman*, 550 F.3d 1258, 1265 (10th Cir. 2008); *Cannon v. Mullin*, 383 F.3d 1152, 1159 (10th Cir. 2004) ("[t]o show prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the jury would have had a reasonable doubt respecting guilt") (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

With these principles in mind, the Court will analyze each claim in turn to determine whether the state courts properly applied clearly established federal law to adjudicate Evans' ineffective assistance of counsel claims.

A.  Claim One: Conflict of Interest

Evans claims that, in violation of his Sixth Amendment right to effective assistance of counsel, defense counsel, Laurie Kepros, operated under a conflict of interest by disagreeing with "senior" co-counsel, James O'Connor, as to whether Evans should accept the plea and, thereby, she was unable to pursue any possible defenses that would allow Evans to make an informed choice about whether to plead guilty.[3] *See* Application, docket #2 at 5; *see also* Traverse, docket #23 at 4-5.

Taking Evans' allegations as true, the court of appeals found that Evans did not sufficiently

---

[3]Additionally, Evans argues that, "[a]ccordingly, when counsel refused to investigate the facts of the case or pursue a defense strategy and then also refused to allow co-counsel to do so, [Evans] was subject to ineffective assistance resulting from conflict of interest." Traverse, docket #23 at 5. However, these allegations of O'Connor's failure to investigate and to pursue a defense strategy were not raised either in the state courts or in the Application in this case. Therefore, the claims are not exhausted and the Court will not address them. *See supra* at Section II for exhaustion requirements; *see also Beaudry v. Corr. Corp. of Am.,* 331 F.3d 1164, 1166 n. 3 (10th Cir. 2003) (courts generally do not review issues raised for the first time in a reply brief); *see also Home Design Servs., Inc., v. B & B Custom Homes,* 509 F. Supp. 2d 968, 971 (D. Colo. 2007) ("'[R]eply briefs reply to arguments made in the response brief - they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.'" [citation omitted]).

12

allege that Ms. Kepros actively represented conflicting interests by opposing the proposed plea agreement. The appellate court determined that Evans failed to allege sufficiently that either attorney committed unprofessional errors as a result of the disagreement and concluded that regardless of the advice given by Evans' attorneys, the trial court clearly informed Evans that the decision to plead guilty was his alone to make.

The Sixth Amendment right to effective assistance of counsel includes the right to representation that is free from conflicts of interest. *United States v. Gallegos*, 39 F.3d 276, 277-78 (10th Cir. 1994). Evans failed to raise his "conflict of interest" objection before the trial court; thus, to establish his claim here, Evans must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). Thus, under *Cuyler* and its progeny, the Court must address first, whether there existed an actual conflict and, if so, whether such conflict had an adverse impact on the attorney's performance. *See Gallegos*, 39 F.3d at 278.

Following these principles, the Court recommends finding that the court of appeals' decision was neither contrary to nor involved an unreasonable application of clearly established federal law. Typically, conflicts of interest may arise when an attorney actively represents adverse interests, such as when an attorney has previously represented a witness who is adverse to a client he currently represents or when an attorney represents two or more defendants who become adverse to each other during the course of litigation. *See, e.g., United States v. Ramos*, 42 F. App'x 318, 322 (10th Cir. 2002) (unpublished). In addition, a conflict of interest may occur between a party and his counsel "when the interests of a defendant and his attorney diverge with respect to a material factual or legal issue or to a course of action ... and the conflict violate[s] the Sixth Amendment when counsel's

13

representation of the client is adversely affected by the existence of the conflict." *Ventry v. United States*, 539 F.3d 102, 111 (2d Cir. 2008) (citation and quotations omitted); *see also United States v. Jones*, 482 F.3d 60, 75 (2d Cir. 2006) (a disagreement between a defendant and his attorneys over defense tactics or strategy is not sufficient to constitute an actual conflict of interest); *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007) (same).

Here, Evans describes none of the above scenarios; rather, he claims that a conflict of interest arose when his attorneys themselves disagreed over whether he should accept a plea. This Court agrees with the Colorado Court of Appeals that Evans did not sufficiently allege that Ms. Kepros actively represented conflicting interests by opposing the proposed plea agreement; rather, Ms. Kepros' alleged action demonstrates that she was actively representing Evans' interest but merely disagreed with the strategy. There is no allegation nor indication that Ms. Kepros' and Evans' interests were adverse to one another. *See Mickens v. Taylor*, 535 U.S. 162, 175 (2002) ("until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance").

Moreover, Evans' allegation that Ms. Kepros' disagreement with senior counsel caused her to be unable to pursue possible defenses that would allow Evans to make an informed choice about the plea is nothing more than speculation and supposition. Evans points to no "possible defenses," the knowledge of which would have assisted him in deciding whether to accept the plea. *See Mickens*, 535 U.S. at 171 (an "actual conflict of interest" means "a conflict *that affected counsel's performance* - as opposed to a mere theoretical division of loyalties") (italics in original); *see also Le v. Mullin*, 311 F.3d 1002, 1024 n.12 (10th Cir. 2002) (a habeas petitioner must point to specific errors or omissions by counsel to succeed on an ineffective assistance of counsel claim). Moreover,

Evans points to, and the Court has found, nothing in the record to indicate that Ms. Kepros "fled the courtroom when Mr. Evans entered his plea and subsequently provided an affidavit to this effect." *See* Application, docket #2 at 5; *see also* Hearing Transcript, vol. III.

Thus, applying the correct constitutional standards as set forth in *Cuyler*, *Mickens*, and *Edens*, *supra*, the appellate court concluded that Evans failed to demonstrate an actual conflict of interest that adversely affected Ms. Kepros' performance. *Id.* Consequently, this Court recommends that the District Court deny the Application with respect to Claim One.

  B. <u>Claim Two: Coercion</u>

Evans contends that he was coerced into accepting a plea bargain, including a term for fifty years' incarceration, when, after telling his counsel, James O'Connor, that he would not take the plea, O'Connor allegedly said, "don't be stupid" and told Evans that if he did not take the plea he would go to prison for life. O'Connor then told Evans that he had seventeen hours to choose between fifty years or life in prison. Evans argues that O'Connor misrepresented the facts and sentencing possibilities and did not adequately advise him of his right to proceed to trial.

In affirming the trial court's decision denying the Rule 35(c) motion, the court of appeals took Evans' allegations as true and concluded they did not establish that O'Connor's advice was outside the bounds of reasonable competence. According to the appellate court, the record supports a finding that O'Connor's advice to Evans was calculated to avoid exposing him to the possibility of a sentence to life in prison, and Evans' arguments regarding insufficiency of evidence against him were conclusory and unsupported by the record.

This Court recommends finding that the appellate court's decision was neither contrary to nor an unreasonable application of clearly established federal law. The *Strickland* framework for

assessing the constitutional effectiveness of counsel applies to challenges to guilty pleas based on claims of ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Under the first prong of the *Strickland* test, Evans must demonstrate that his counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Thus, with respect to the guilty plea, Evans must establish that his counsel's advice to plead guilty was outside "the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56. Under the prejudice prong, Evans "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

"The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* at 56 (citation and internal quotation marks omitted); *accord United States v. Carr,* 80 F.3d 413, 416 (10th Cir. 1996); *Osborn v. Shillinger,* 997 F.2d 1324, 1327 (10th Cir. 1993). A court must "uphold a state court guilty plea on federal review if the circumstances demonstrate that the defendant understood the nature and the consequences of the charges against him and that the defendant voluntarily chose to plead guilty." *Miles v. Dorsey,* 61 F.3d 1459, 1466 (10th Cir. 1995) (citing *Boykin v. Alabama,* 395 U.S. 238, 242-44 (1969)).

Here, Evans does not claim that O'Connor's information was incorrect but, rather, that O'Connor may have omitted information that would assist Evans in making an informed choice about accepting the plea. However, the record reflects that during the providency hearing, Judge Hopf not only informed Evans of the rights he would give up by accepting the plea bargain, including the right to proceed to trial, but also asked Evans whether anyone had tried to get him to plead guilty against his better judgment and whether anyone had coerced him; Evans responded that

no one coerced him and that he was satisfied with his attorneys' representation. *See* Record, vol. III at 3-4. Moreover, the deputy district attorney explained in detail to Evans the elements of the crimes for which he was pleading guilty that would need to be proved if the case proceeded to trial; Evans indicated that he understood. *Id.* at 4-12. Further, the judge explained to Evans the sentencing possibilities for a guilty plea of the crimes for which he was charged. *Id.* at 13-14.

Finally, Evans signed and initialed the Request to Plead Guilty and Plea Agreement that explained the plea bargain in detail, including the rights Evans waived in proceeding to trial and the agreed sentence. Record, vol. II at 274-78. Thus, Evans' contention that he was coerced to accept the plea bargain based upon misrepresented facts or lack of information is contradicted by the record.

Moreover, the allegation that O'Connor told Evans "don't be stupid" and informed him of a choice to accept the plea agreement or face the possibility of a life sentence does not constitute advice that "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. A defendant cannot succeed on a claim for ineffective assistance of counsel simply because his attorney "vigorously urges" him to accept a plea agreement that appears to be in his best interest. *See Miles,* 61 F.3d at 1470 (quoting *Williams v. Chrans,* 945 F.2d 926, 933 (7th Cir. 1991) for the proposition that "even strong urging by counsel does not invalidate a guilty plea") (additional citation and internal quotation marks omitted); *see also Carr,* 80 F.3d at 417 (rejecting a claim of coercion even though an attorney castigated his client for resisting a plea agreement by calling him "stupid" and "a f* * *ing idiot"); *Uresti v. Lynaugh*, 821 F.2d 1099, 1102 (5th Cir. 1987) (attorney's threat to withdraw from case if client did not accept plea bargain was insufficient to establish that plea was involuntary). Evans understood that he did not have to follow his attorneys' advice or

plead guilty. Record, vol. II at 274; *see also Carr*, 80 F.3d at 417 (commenting that even when outside pressures are "palpable" to a defendant, they "do not vitiate the voluntariness of his plea; it [is] still his choice to make").

Thus, applying the correct constitutional standards as set forth in *Hill*, *Carr*, and *Miles*, *supra*, the appellate court concluded that Evans failed to demonstrate O'Connor's advice to plead guilty was outside "the range of competence demanded of attorneys in criminal cases," and this Court need not address the prejudice prong of the *Strickland* framework. *Id.* The Court recommends that the District Court deny the Application with respect to Claim Two.

## III. Conclusion

In viewing the merits of Evans's claims, Evans is not entitled to relief in this Court under 28 U.S.C. § 2254. Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required. *See Church v. Sullivan*, 942 F.2d 1501, 1510 (10th Cir. 1991) (citing *Cuyler*, 446 U.S. at 349-50) (a petitioner must allege the existence of an actual conflict before an evidentiary hearing is required to provide him an opportunity to show the conflict adversely affected his defense).

Based upon the foregoing analysis, and the entire record herein, I hereby RECOMMEND that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [filed July 31, 2008; docket #2] be **denied**, and that this case be dismissed with prejudice.

Dated this 25th day of January, 2010, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge